UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. VARIOUS FIREARMS, Defendant. | Case No.18-cv-03039-VKD **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT** Re: Dkt. No. 32 |

This is an *in rem* action for civil forfeiture of nine firearms seized after execution of a search warrant at a private residence. Dkt. No. 1. The United States now moves for default judgment. Dkt. No. 32. On May 14, 2019, the Court heard oral argument on the United States' motion. Dkt. No. 37. Having considered the United States' moving papers and arguments at the hearing, the Court grants the United States' motion for default judgment as to one of the grounds for forfeiture asserted, and denies the motion as to the other.

This Court has jurisdiction over this matter under 28 U.S.C. § 1355, which vests district courts with original jurisdiction in civil forfeiture proceedings.[1] 28 U.S.C. § 1355(a). In addition, this action is properly venued in this district because the defendant property is located in this district, and the acts or omissions giving rise to their forfeiture occurred in this district. Dkt. No. 1 ¶ 3; 28 U.S.C. § 1355 (b)(1).

## I. BACKGROUND

On May 22, 2018, the United States commenced this action by filing a verified forfeiture

---

[1] The United States has consented to proceed before a magistrate judge. Dkt. No. 13; *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017) (noting that a property owner's consent to magistrate judge jurisdiction is not a prerequisite to entry of default against his or her interest in property subject to an *in rem* action); 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

complaint against the following property ("the defendant property"):

1) One (1) Colt .38 Super caliber, Government model pistol bearing serial number 2933159;
2) One (1) Colt .38 Super caliber, Custom model pistol bearing serial number ELCEN8536;
3) One (1) Colt .38 Super caliber, Super 38 model pistol bearing serial number 36756;
4) One (1) Colt .38 Super caliber, Commander model pistol bearing serial number 27057-LW;
5) One (1) Colt .38 Super caliber, Government model pistol bearing serial number 38SS05430;
6) One (1) Colt .38 Super caliber, Government model pistol bearing serial number 38SS09144;
7) One (1) Colt .38 Super caliber, Government model pistol bearing serial number 38SS09196;
8) One (1) Colt .38 Super caliber, Government model pistol bearing serial number MHE252; and
9) One (1) Colt .380 caliber, MKIV Mustang model pistol bearing serial number MU24832.

Dkt. No. 1 ¶ 1.

The United States seized the defendant property on December 20, 2017 pursuant to a federal search warrant issued in conjunction with an investigation into the unlicensed dealing of firearms. *See id.* ¶¶ 7, 15-19; *see also* Dkt. No. 32 at 5. The defendant property was found at a private residence in Salinas, California alleged to be the residence of Oscar Camacho, Jr., along with evidence of drug trafficking, including cocaine, methamphetamine, heroin, $12,951 in cash, and four digital scales. *Id.* ¶¶ 16, 18. Mr. Camacho, Jr. is a convicted felon. *Id.* ¶ 9. According the complaint, Mr. Camacho, Jr. obtained the firearms from Carlos Fernandez, a police detective who purchased firearms available only to law enforcement and illegally resold them to private buyers through Ronin Tactical Group ("Ronin Tactical"). *Id.* ¶¶ 7-11, 12-14. The complaint also alleges that Mr. Camacho, Jr.'s father, Oscar Camacho, Sr., and his brother, Rafael Camacho, acted as straw buyers who purchased firearms from Mr. Fernandez for Mr. Camacho, Jr. *Id.* ¶¶ 9, 13, 19, 29, 31-33, 35-37, 41.

In January 2018, a grand jury indicted Mr. Camacho, Jr. for possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 831(a)(1) and (b)(1)(B)(ii) and unlawful possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* ¶ 45; *United States v. Camacho*, No. 18-cr-00001-BLF, Dkt. No. 7 (Jan. 4, 2018). No trial has been

scheduled in that action. The United States asserts that the defendant property is subject to forfeiture pursuant to 18 U.S.C. § 924(d)(1) as firearms possessed by a convicted felon, and pursuant to 21 U.S.C. § 881(a)(6) as property constituting or derived from proceeds obtained, directly or indirectly, as a result of distribution or possession with intent to distribute a controlled substance. *Id.* ¶¶ 1, 46-52.

On June 21, 2018, the United States served via certified mail copies of the complaint, notice of forfeiture action, warrants of arrest of property *in rem*, and other documents related to this action on Mr. Camacho, Jr. and four other potential claimants (collectively, "the potential claimants"): Oscar Camacho, Sr., Rafael Camacho, Carlos Fernandez, and Rudy Fernandez. Dkt. No. 24. The United States also published a notice of forfeiture action on an official government Internet site (www.forfeiture.gov) for 30 consecutive days beginning on July 28, 2018. Dkt. No. 25. None of the potential claimants nor any other person has filed a claim in this action.

On January 29, 2019, the United States requested entry of default as to the potential claimants. Dkt. No. 28. The Clerk of the Court entered default against the potential claimants on January 30, 2019.[2] Dkt. No. 29. The United States now seeks entry of default judgment declaring the defendant property forfeited to the United States. Dkt. No. 32.

## II. LEGAL STANDARDS

### A. Forfeiture

Civil forfeiture proceedings are governed by specific forfeiture statutes, the Civil Asset Forfeiture Reform Act of 2000 (18 U.S.C. § 983), the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"), and this district's Admiralty Local Rules. Because civil forfeiture is generally disfavored due to the limited procedural protections available to property owners, *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994), the Ninth Circuit requires strict adherence to the procedural rules governing civil forfeiture proceedings. *See United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999) (denying forfeiture where government "erred" by failing to provide due notice to property owner); *$191,910.00 in*

---

[2] The entry of default against the potential claimants was in error, as the correct defendant in this *in rem* action is the Various Firearms.

3

*U.S. Currency*, 16 F.3d at 1068–69 (strictly construing currency forfeiture provisions of 19 U.S.C. § 615 against government and holding that "the burden on the government to adhere to procedural rules should be heavier than on claimants").

### B. Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a district court may enter default judgment where the Clerk of the Court, pursuant to Rule 55(a), has previously entered default based upon a failure to plead or otherwise defend an action. Fed. R. Civ. P. 55(a). However, entry of default judgment in the plaintiff's favor is not automatic. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (noting that the district court's decision on whether to enter default judgment is discretionary).

In deciding whether to enter default judgment, a court should consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

## III. DISCUSSION

### A. Application of the *Eitel* Factors

The Court first considers whether the *Eitel* factors support entry of default judgment in favor of the United States.

#### 1. Possibility of prejudice to the United States

The first *Eitel* factor considers whether the United States would suffer prejudice if default judgment is not entered, and whether such potential prejudice weighs in favor of granting default judgment. *Eitel*, 782 F.2d at 1471; *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). The United States maintains that a civil forfeiture action is the only means by which it may recover the defendant property, and that it would be left without recourse

4

if the Court does not enter default judgment. *See also United States v. $22,520 in United States Currency*, No. 13-cv-05107-HSG (KAW), 2015 WL 7769163, at * 3 (N.D. Cal. Nov. 10, 2015).

This favor weighs in favor of granting default judgment.

### 2. Merits of the United States' claim and sufficiency of complaint

The second and third *Eitel* factors concern the merits of the claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. The Ninth Circuit suggests that these factors require that a plaintiff state a claim for relief on which it may recover. *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

The United States' claim for civil forfeiture is premised on two forfeiture statutes: 18 U.S.C. § 924(d)(1) and 21 U.S.C. § 881(a)(6). Dkt. No. 1¶¶ 1, 46-52. The Court considers the merits of each claim and the sufficiency with which each has been pled.

#### i. Section 924(d)(1) claim

The United States seeks forfeiture of the defendant property pursuant to 18 U.S.C. § 924(d)(1), which provides for forfeiture of "any firearm or ammunition involved in or used in any knowing violation of" 18 U.S.C. §§ 922(g) and 924. The statute requires that any action for foreiture be commenced within 120 days of the seizure. 21 U.S.C. § 924(d)(1). Here, the defendant property was seized on December 20, 2017, and this action was initiated on May 22, 2018—33 days after the expiration of the 120-day limitation period. Dkt. No. 1 ¶¶ 15-17.

At the hearing on this motion, the United States stated that an administrative forfeiture proceeding concerning the defendant property took place before the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") at some point between December 20, 2017 and May 22, 2018, and that such proceeding satisfies the statutory requirement. Dkt. No. 37. However, neither the complaint nor the United States' motion for default judgment mentions any such proceeding or the date on which it occurred. There is likewise nothing in the complaint or the motion demonstrating that the potential claimants were given notice of such proceeding.

Even if the Court were to credit the United States' unsupported representations that an administrative proceeding was timely conducted in advance of filing this action, it appears the

5

United States' section 924(d)(1) claim would still be untimely. Specifically, the United States argued at the hearing that 18 U.S.C. § 983(a)(1)(A) allows it 60 days to provide notice of an administrative forfeiture proceeding to potential claimants, and then an additional 90 days under section 983(a)(3)(A) to file a civil forfeiture complaint in district court. Assuming that the United States did indeed have 150 days from the date of the seizure to file a civil forfeiture complaint in this Court, its deadline to file the complaint was May 21, 2018.[3] The complaint was filed May 22, 2018—one day late. Dkt. No. 1.

As the complaint makes no mention of any administrative forfeiture proceeding or any other justification for the delay in filing this forfeiture action, the United States' claim under section 924(d)(1) is time-barred. The United States is not entitled to default judgment on this claim.

### ii. Section 881(a)(6) claim

The United States also seeks forfeiture of the defendant property pursuant to 21 U.S.C. § 881(a)(6), which provides for forfeiture of "[a]ll . . . things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter" and "all proceeds traceable to such an exchange." The statute of limitations governing forfeitures under section 881 is drawn from the customs laws. *See* 21 U.S.C. § 881(d). The applicable statute of limitations provides:

> No suit or action to recover . . . any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, which ever was later . . . .

19 U.S.C. § 1621; *see also United States v. James Daniel Good Real Prop.*, 114 U.S. 43, 63 (1993) (noting that 19 U.S.C. § 1621 provides the applicable statute of limitations for a section 881(a) claim).

---

[3] 150 days from December 20, 2017 is May 19, 2018. Because May 19, 2018 was a Saturday, the United States' deadline was the next court day, Monday, May 21, 2018. Fed. R. Civ. P. 6(a)(1)(C).

6

Because the United States brought this forfeiture action within the two-year statute of limitations for section 881 forfeitures, the action is timely with respect to this claim. Dkt. No. 1 ¶ 7.

With regard to the merits of the claim, the United States must show by a preponderance of the evidence that there is a substantial connection between the illegal drug activities and the defendant property. *United States v. $11,500 in U.S. Currency*, 710 F.3d 1006, 1013 (9th Cir. 2013) (citing 18 U.S.C. § 983(c)(1)); *United States v. The Sum of $185,336.07 United States Currency Seized from Citizen's Bank Account L7N01967*, 731 F.3d 189, 196 (2d Cir. 2013). The Court must consider whether, taking the factual allegations of the complaint as true, the United States has shown that the defendant property is subject to forfeiture under this standard.

In the complaint, the United States asserts that there is "probable cause" to believe that the defendant property represents proceeds traceable to illegal drug activities of Mr. Camacho, Jr. Dkt. No. 1 ¶ 51. The United States does not refer to any standard in its motion, but acknowledged at the hearing that the standard is "preponderance of the evidence" rather than "probable cause." Dkt. No. 37. The United States relies on the following allegations of the complaint to establish that the defendant property is traceable to illegal drug activities:

Between June 2, 2016 and July 29, 2017, Mr. Camacho, Sr. and Rafael Camacho purchased various firearms from Mr. Fernandez and Ronin Tactical, which they then purportedly passed on to Mr. Camacho, Jr. Dkt. No. 1 ¶¶ 9, 13. During this period, Mr. Camacho, Sr. and Rafael Camacho each purchased several firearms from Mr. Fernandez, Mr. Fernandez's relatives, or Ronin Tactical. *Id.* ¶¶ 10, 13, 32-33, 35-36, 41. For example, Instagram messages between and posts by both Mr. Camacho, Jr. and Mr. Fernandez suggested that, through Mr. Camacho, Sr., Mr. Camacho, Jr. was the true purchaser of a Colt pistol bearing serial number 27057-LW, one of the firearms for which forfeiture is now sought. *Id.* ¶¶ 7, 12-14. Between May 30, 2016 and February 28, 2017, Mr. Camacho, Jr.'s phone was in communication with Mr. Fernandez's phone approximately 34 times. *Id.* ¶ 11.

Following the search of Mr. Camacho, Jr.'s residence, federal agents recovered iPhones from Mr. Camacho, Jr.'s bedroom which contained numerous photos of various firearms,

7

including some of the defendant firearms, and messages with Mr. Fernandez concerning at least one of the defendant firearms. *Id.* ¶¶ 25, 27, 28-29, 31-33, 35, 38-41. Other messages found on the iPhones included a photo of what appeared to be drugs, photos of at least some of the defendant firearms, and statements by Mr. Camacho, Jr. asserting or suggesting his ownership of the firearms. *See, e.g.*, *id.* ¶ 30 (describing photo of suspected heroin); *id.* ¶ 33 (describing Mr. Camacho, Jr.'s transmission of a photo of the Colt .38 caliber Mustang pistol bearing serial number MU24832 and statement that it was "for [his] home"). For example, one of the iPhones contained WhatsApp messages between Mr. Fernandez and Mr. Camacho, Jr. concerning the purchase of the Colt .38 pistol bearing serial number 27057-LW, which federal agents found with other defendant firearms in the bottom drawer of the dresser in the master bedroom of the residence. *Id.* ¶¶ 17, 41. One iPhone also contained a message including two photographs of the Colt .38 pistol bearing serial number MHE252, which federal agents found with another defendant firearm in the garage attic of the residence. *Id.* ¶¶ 17, 29.

Federal agents also recovered over 1,300 grams of cocaine, smaller amounts of methamphetamine and heroin, and $12,951 in cash wrapped in rubber bands and plastic inside Mr. Camacho, Jr.'s bedroom. *Id.* ¶¶ 16, 18. Mr. Camacho, Jr. admitted that he sold cocaine, and that he was the only person residing in the house who did so. *Id.* ¶ 23. Although he stated that he earned money working for his parents' respective businesses, the United States contends this assertion was false and that his income was derived from the sale of illegal drugs. The complaint pleads that the California Employment Development Department reported no record of a work address for Mr. Camacho, Jr. under the social security number known to law enforcement. *Id.* ¶ 24. Furthermore, the complaint pleads that Mr. Camacho, Sr. (his father) no longer owned or managed a business, and that Rafael Camacho (his brother) was a student who worked at Smart and Final. *Id.*

The Court finds these facts sufficient to state a claim that Mr. Camacho, Jr. purchased, either directly or through his family members, the defendant property with money obtained through the sale of cocaine and other controlled substances, as opposed to money obtained from other sources. *See, e.g.*, *United States v. Contents of Wells Fargo Bank Inv. Account No. 1687332*

8

*in the Name of Johanna Leal*, No. 1:09-cv-000007-OWW-SMS, 2009 WL 3625138, at * 4–5 (E.D. Cal. Oct. 27, 2009) (finding that records showing that potential claimants had not worked for two years and received disability compensation, and that tax documents, public records, and evidence at potential claimants' homes revealed that they would not be able to afford luxury vehicles without drug proceeds as income).

These factors weigh in favor of default judgment with respect to the section 881(a)(6) claim.

### 3. Amount of money at stake

The fourth *Eitel* factor considers the amount of money at stake in the litigation. *Eitel*, 782 F.2d at 1471. When the amount of money is substantial or unreasonably large, default judgment is discouraged. *See id.* at 1472 (finding that three-million dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. S. Elec. Inc.*, No. 09-32 JF (RS), 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Bd. of Trustees v. RBS Washington Blvd, LLC*, No. C 09-00660 WHA, 2010 WL 145097, at *3 (N.D. Cal. Jan. 8, 2010).

Here, the United States asserts that the value of the defendant property is unknown, given that these particular firearms are available only to law enforcement and may not be sold legally to the public. Dkt. No. 1 ¶¶ 7-8; Dkt. No. 32 at 9. However, the United States estimates the value of the defendant property to be approximately $10,400. Dkt. No. 36 at 2.

Given the connection between the alleged illegal drug activities and the defendant property, the estimated value of the defendant property does not weigh against default judgment.

### 4. Possibility of a dispute concerning material facts or excusable neglect

The fifth and sixth *Eitel* factors concern the potential for factual disputes and whether a claimaint's failure to respond was likely due to excusable neglect. *Eitel*, 782 F.2d at 1471–72.

With respect to the fifth factor, no potential claimants have participated in this action or attempted to contest the United States' allegations of material facts or legal assertions. Furthermore, no potential claimant has moved to set aside the entry of default despite notice of filings in this matter, including the verified complaint, request for entry of default, and the instant

1  motion for default judgment. Dkt. Nos. 24, 26, 31; Dkt. No. 28 at 4, Dkt. No. 32 at 11. The
2  United States served the complaint via certified mail and is in possession of certified mail receipts
3  signed by the potential claimants. Dkt. No. 36 at 6.

As there is no evidence suggesting that a potential claimant's failure to file a claim or otherwise participate in this litigation is due to excusable neglect, the factor weighs in favor of default judgment.

### 5. Policy favoring decisions on the merits

The seventh *Eitel* factor requires consideration of the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1472; *see also Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). Although default judgment is disfavored, "[t]he very fact that [Rule] 55(b) exists shows that this preference, standing alone, is not dispositive." *Kloepping*, 1996 WL 75314 at *3. "While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits [,] . . . [as] when a party fails to defend against an action . . . ." *Id.*

While the Court prefers to decide matters on the merits, the potential claimants' failure to participate in this litigation makes that impossible. Default judgment against the defendant property is the United States' only recourse. *See United States v. Roof Guard Roofing Co., Inc.*, No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) ("When a properly adversarial search for the truth is rendered futile, default judgment is the appropriate outcome.").

This factor also weighs in favor of default judgment.

### B. Procedural Requirements for Forfeiture

The Court next considers whether the United States has met the procedural requirements for forfeiture of the defendant property. Pursuant to the Supplemental Rules, the United States must initiate a forfeiture action by filing a verified complaint that describes the property at issue with reasonable particularity. Supp. R. Admir. Mar. Claims C(2), G(2). The complaint must also include sufficient factual allegations to support a "reasonable belief" that the United States will be able to meet its burden at trial. The Supplemental Rules also require that the United States provide notice of the forfeiture action directly to known potential claimants and by publication in a

10

newspaper of general circulation in this district. Supp. R. Admir. Mar. Claims C(4), G(4)(a)(iv)(A), G(4)(b)(iii)(B). That notice must include the time for filing a claim. *Id.* Finally, the United States must also comply with the further requirements of Admiralty Local Rules 6-1 and 6-2.

The Court address each of the requirements below.

### 1. Adequacy of the complaint

Here, the United States filed a verified complaint for forfeiture in accordance with 18 U.S.C. § 981(b)(2)(A). The complaint provides the grounds for jurisdiction and venue, a description of the defendant property, and the federal statutes under which the forfeiture action was brought. Dkt. No. 1 ¶¶ 1-6. As explained above, the facts alleged support a reasonable belief that the United States will meet its burden of proof at trial as to the forfeiture claim based on 21 U.S.C. § 881(a)(6). *See supra* Section III.A.2.ii. The Court, therefore, concludes that the United States has met the requirements set forth in the Supplemental Rules, discussed above, for civil forfeiture actions with respect to its section 881(a)(6) claim.

### 2. Adequacy of notice and arrest of property

The Admiralty Local Rules of this district required that the United States demonstrate due notice of the action and arrest of the property. Admir. L.R. 6–1(a). Since this forfeiture action arises under federal statute, the notice and arrest requirements must comply with Supplemental Rule G(3)-(4). Admir. L.R. 6–1(a)(1).

If the defendant is not real property, "the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Supp. R. Admir. Mar. Claims G(3)(b)(i). Here, the United States seized the defendant property pursuant to a search warrant executed on December 20, 2017, and the Clerk of the Court issued arrest warrants on June 19, 2018. Dkt. Nos. 15, 16, 17, 18, 19, 20, 21, 22, 23. Thus, arrest was proper.

Supplemental Rule G(4) requires the United States to provide both general notice to the public and direct notice of the forfeiture action to any known person who reasonably appears to be a potential claimant, so that the person has an opportunity to file a timely claim and defend the forfeiture action as a party to the litigation. Supp. R. Admir. Mar. Claims G(4). This notice may

11

be sent to the potential claimant's attorney in a criminal matter that is related to the forfeiture action. Supp. R. Admir. Mar. Claims G(4)(b)(iii)(B). The public notice requirement may be met by publishing the notice on an official government forfeiture website for at least thirty consecutive days. Supp. R. Admir. Mar. Claims G(4)(a)(iv)(C), (4)(b)(i).

Here, the United States' notice contained a description of the defendant property and the applicable deadlines to submit verified claims—specifically, any person or entity having an interest in the defendant property was required to file a verified claim or statement within sixty days of the first date of publication of notice. Dkt. No. 25. The published notice was posted online from July 28, 2018 through August 26, 2018, which was thirty consecutive days. *Id.*

In addition, Supplemental Rule G(4)(b)(iii)(E) requires that "[n]otice to a person from whom the property was seized . . . may be sent to the last address that person gave to the agency that seized the property." On June 21, 2018, the United States sent the notice of forfeiture action, the complaint, and other documents to the potential claimants at their home addresses, including the address at which the defendant property was seized. Dkt. No. 24. On February 1, 2019, the United States sent the notice of entry of default to the potential claimants at their home addresses, as well as to Mr. Camacho, Jr.'s criminal defense counsel. Dkt. No. 31.

### 3. Absence of timely claim

The United States must show that no one has filed timely and responsive pleadings pursuant to Supplemental Rule G(5). Admir. L.R. 6–2(a). As of January 19, 2019, the date the United States requested an entry of default, the period to respond had long expired. To date, no claims or answers have been filed.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the United States' motion for default judgment of forfeiture of the defendant property based on 21 U.S.C. § 881(a)(6). The *Eitel* factors weigh in favor of default judgment on that claim, and the United States has complied with the procedural requirements of the Supplemental Rules and the Admiralty Local Rules for obtaining a default judgment against *in rem* defendant property. The Court denies the motion for default judgment for forfeiture based on 18 U.S.C. § 924(d)(1).

The Clerk of the Court shall issue a corrected entry of default as to defendant Various Firearms. *See supra* n.2.

Following the issuance of a corrected entry of default, the Court will enter judgment in favor of the United States as to its request for forfeiture pursuant to 21 U.S.C. § 881(a)(6) only. The appropriate federal agency shall dispose of the defendant firearms in accordance with the law.

**IT IS SO ORDERED.**

Dated: July 2, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge

13